IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL K.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 20 C 2696 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(I), 423, over three years ago in July of 2017. (Administrative Record (R.) 233-34). He claimed that he has been disabled since August 2011, but confusingly stated his disability had ended in August 2011. (R. 233). He listed depression, obesity, sleep apnea, diabetes, and shoulder impingement as the reasons he could no longer work. (R. 262). Over the next two and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on May 4, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. §636(c) on May 14, 2020. [Dkt. #6]. Plaintiff asks the court to reverse

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**FACTUAL BACKGROUND.**

**A.**

Plaintiff was born on August 15, 1979, and he was 32 years old at the time he claims he became unable to work. In his disability report, he claimed that in the last 15 years he has had one job, and that only for the last few months of 2005. (R. 263). At the hearing, however, his attorney explained that he has been working since 2005, but steadily decreasing hours until he was no longer engaging in substantial gainful activity in 2017. (R. 40).

As is generally the case in these proceedings, the medical record is large, covering about 500 pages. (R. 361-847). And, as is also generally the case with plaintiffs claiming disability based on psychological issues like depression or anxiety, page after page of therapists' notes show that plaintiff is sometimes depressed, sometimes better, sometimes fine. One day his affect is fine, another it's blunted. His concentration, attention, insight and thought processes are, in the main, normal. He's often tired and when he works, he's late a lot. Plaintiffs in these cases invariably recount issues with family, spouses, or significant others; the plaintiff here is no different. He has trouble with his fiancee. There's not much in a record like this to prove plaintiff is unable to work. Indeed, as in many instances, it depicts a person who, most people, working every day, year after year, can see in themselves. That is not to belittle the plaintiff's situation, but merely to recognize as the Seventh Circuit has stressed, that severe depression and the "blues" are very different. *See Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). And a diagnosis of depression is not necessarily a disability. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998). These are always difficult cases for an ALJ to sift through and for a court to review.

It appears as though the plaintiff began mental health treatment in February 2017, at Turning Point Behavioral Health Center for his depression. (R. 456-65). At his initial interview, the counselor completing the checklist noted him to be: "cooperative, open, and anxious"; mood was "sad"; thought process was "logical"; perception was "normal"; memory was "intact"; insight was "unimpaired"; attention was "average"; fund of knowledge was "average"; behavior was "unremarkable." (R. 461-62). Plaintiff exhibited a lack of motivation and diminished interest in pleasurable activities. (R. 463). Based on these observations the counselor assigned a GAF score of 52 (R. 465), indicating moderate symptoms or limitations in social, occupational, or school function. *Felts v. Saul*, 797 F. App'x 266, 269 n.1 (7th Cir. 2019). Plaintiff then began sessions with a social worker, Danielle Torres. He was late for the first session on February 24, 2017, and said he was tired. (R. 479). He and his fiancee reported he was always tired and didn't want to go out. (R. 479). Two months later, he reported being "exhausted and relieved." (R. 481). At the May session, he was "anxious and exhausted." (R. 483). August: "exhausted and depressed." (R. 485). The notes are terse, mostly uninformative, and include no observations from the mental health care provider other than repeated diagnoses of depressive disorder. Plaintiff had a habit of skipping therapy. (R. 643, 650).

In July, plaintiff saw psychiatrist, Dr. Robert Channon. Dr. Channon offered only a handful of checklist observations from the initial session: cooperative and withdrawn; fluent and spontaneous speech, blunted but appropriate affect, depressed mood, coherent thought process, alert. (R. 601-04). Dr. Channon prescribed Bupropion, (R. 604, 627), and he continued treating plaintiff through 2017. Notes from the sessions were terse and similar: plaintiff was tired and cheerful; disheveled and cooperative; fluent speech; blunted and appropriate; coherent, logical thought process; impaired judgment; normal memory. (R. 618, 622-25). Others were in the same

vein: calm and cooperative; fluent and spontaneous speech; blunted and appropriate affect; dysphoric; coherent thought; impaired judgment. (R. 635-37). Or; cooperative, open, and anxious; sad; normal speech; logical thought process; normal memory; average insight and attention. (R. 656-57). Or: groomed appropriately and cooperative; fluent and spontaneous speech; blunted and stable affect; depressed mood; coherent and logical thought process; alert. (R. 669-72). Or: groomed appropriately and cooperative; fluent and spontaneous speech; constricted, stable, and appropriate affect; coherent and goal-directed thought; alert; impaired judgment. (R. 679-81). Or: groomed appropriately and cooperative; fluent and spontaneous speech; blunted and appropriate affect; coherent, logical, and goal-directed thought; alert; intact judgment and insight; no memory issues. (R. 695-97). These cryptic, checklist reports go on like this, page after page, for well over two hundred pages. (R. 569-795).

After several months of that, in December of 2017, Dr. Channon wrote a letter on behalf of plaintiff to the agency. He reported that plaintiff suffered from moderately severe major depression, and that it "disabled [him], severely impacting his ability to work." The doctor estimated it would cause plaintiff to miss 7 to 10 days per month of work. (R. 567).

In September 2017, psychologist, Olga Green, examined plaintiff for the Agency, noting his complaints of decreased energy, lack of enjoyment, and difficulty interacting. (R. 511). She observed plaintiff to be euthymic and stoic; his speech was spontaneous and appropriate; thought process was normal, coherent, and relevant; concentration was normal and memory was good; reasoning and abstract thinking were average; judgment and insight were normal. (R. 513-14). Dr. Green administered the Wechsler Adult Intelligence Scale-4thedition (WAIS-IV), which showed average results on all areas – cognitive ability, verbal comprehension, concentration – with the exception of plaintiff's speed of processing visual material, which was in the borderline

4

range compared to his peers. (R. 515). Dr. Green explained that this could make learning and processing novel information time-consuming for him. (R. 515). Dr. Green's diagnosis was mild Major Depressive Disorder and opined that plaintiff's ability to carry out tasks with reasonable persistence and pace was limited. (R. 517). She also thought his ability to respond appropriately to others was likely fair and his ability to appropriately tolerate stress was limited. (R. 517).

The psychologist who reviewed the record for the Agency in October 2017 felt that plaintiff's condition was not severe. (R. 98-99). In February 2018, a second psychologist reviewed the record at that time and thought that plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods, carry out detailed instructions, and interact appropriately with the general public. (R. 125-31). Th reviewer thought plaintiff could perform one to two step work. (R, 131-32).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a medical expert and a vocational expert, the ALJ determined the plaintiff had the following severe impairment: major depressive disorder. (R. 22). The plaintiff's shoulder impingement, sleep apnea, and diabetes were all responding to treatment and were non-severe. (R. 22). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically considering Listing 12.04 covering an depressive disorders. (R.23). The plaintiff's understanding and ability to adapt were mildly limited; his social interaction and concentration were moderately limited. (R. 23). The

ALJ then determined that plaintiff could perform a full range of all levels of work with a number of non-exertional limitations:

> He can understand, remember, and carry out simple instructions for simple routine repetitive tasks, while maintaining sufficient persistence, concentration, or pace to timely and appropriately complete such tasks. The work that the claimant can perform can involve occasional contact with coworkers and supervisors, but it must avoid tasks that require interaction with the public. The claimant can adapt to routine workplace changes and make simple work-related decisions, but cannot endure a fast-paced production rate or strict quota requirements.

(R. 24). The ALJ discussed the medical evidence and plaintiff's allegations regarding his symptoms and limitations. (R. 24-28). He found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 28). The ALJ then discussed the medical opinions. He found the report of the consultative psychologist supportable and consistent; he found the report from the doctor who conducted the physical consultative exam similarly persuasive. (R. 27). The ALJ felt Dr. Channon's opinion that plaintiff could not maintain a work schedule unpersuasive as out of proportion with the doctor's treatment notes. (R. 28).

Next, the ALJ, relying on the testimony of the vocational expert, found that, given his residual functional capacity, the plaintiff could perform work existing in substantial numbers in the national economy. Examples were: dish washer (DOT 318.687-010; 280,000 positions); order picker (DOT 922.687-058; 25,000 positions); and cleaner (DOT 323.687-010; 41,000 positions). (R. 29). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 29-30).

ARGUMENT

A.

General Principles

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). The threshold for evidentiary sufficiency is low. *Id.* To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

In addition to the "low hurdle" posed by the substantial evidence test, *Biestek*, 139 S. Ct. at 1154, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The reviewing court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if

7

the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build the "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

The subjectivity of the requirement – one reader's Pont Neuf is another's covered bridge – makes it difficult for ALJs hoping to write acceptable decisions that will withstand judicial scrutiny when challenged. But, at the same time, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).

**B.**

The plaintiff raises three issues with the ALJ's decision that he argues require a remand; each issue is divided into a handful of sub-issues. First, the plaintiff argues that the ALJ's RFC finding is not supported by "substantial evidence." Second, he disagrees with the manner in which the ALJ evaluated his allegations. Finally, he contends that the ALJ erred in dismissing his treating psychiatrist's opinion that he was disabled and his depression would cause him to miss 7-10 workdays each month.

**1.**

The plaintiff contends that the ALJ's decision that he could perform simple repetitive work tasks that were not fast paced or required a strict quota, with no public involvement, but

could involve occasional supervisor and coworker interaction "lacks substantial support." [Dkt. #10, at 6]. We take that to mean the plaintiff contends the ALJ's decision is not supported by "substantial evidence." As already indicated, once a claim has been denied multiple times at the administrative level as the plaintiff's has here, the court's review is limited to determining whether the ALJ's decision is supported by "substantial evidence." In *Biestek v. Berryhill*, *supra*, the Supreme Court recently explained the standard:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

139 S. Ct. 1148 at 1154.

The Supreme Court has also likened the "substantial evidence" standard to the "clearly erroneous" standard. *Dickinson v. Zurko*, 527 U.S. 150, 162–63 (1999). *See also Brault v. Soc. §. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)(the substantial evidence standard is "even more [deferential] . . . than the clearly erroneous standard."). And in order for a decision to be overturned under the "clearly erroneous" standard, the Seventh Circuit has pithily said it must "strike [the reviewing court] as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec.Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). *Accord Central Mfg., Inc. v. Brett*, 492 F.2d 876, 883 (7th Cir. 2007). That's obviously not the case here.

What the ALJ did was to set out a thorough review of the medical record – a record which, to say the least, was not overly informative and not indicative of an individual who could

not at least perform limited work activities. There were, overall, more objective signs of normalcy than not. As the ALJ aptly put it:

> The total effect of the psychiatric treatment record does show the claimant's need for continuous therapy and psychiatric care, sufficient to find some degree of limitations within his allegations. However, the mental status examination notes and nature of treatment do not support the full extent of his allegations, establishing no more issues than those in the residual functional capacity.

(R. 25). While the records were not unremarkable, as the ALJ said, "[o]verall, the record . . . show[s] a consistent balance of mental limitations and mental normalcy, consistent with the residual functional capacity above." (R. 27). There is nothing in plaintiff's treatment notes that would prompt an impartial reviewer to say that the only supportable outcome of this case is a finding that plaintiff is disabled.

But, the plaintiff goes on to contend that, although the ALJ accorded the opinion of Dr. Green, the consultative examiner, persuasive weight and made it part of the RFC finding, the ALJ failed to account for the doctor's finding that plaintiff struggled processing information quickly. [Dkt. #10, at 7]. Indeed, Dr. Green's testing indicated it might be time-consuming for plaintiff to learn and process novel information. In terms of impact on work, she translated this finding into a limited ability to carry out tasks with reasonable persistence and pace, a normal ability to concentrate, fair ability to respond appropriately to others, and a limited ability to appropriately tolerate stress. (R. 515-517). The ALJ accepted this opinion, and found plaintiff had a moderate limitation in concentration persistence and pace. (R. 23). This went into the RFC as plaintiff being able to:

> understand, remember, and carry out simple instructions for simple routine repetitive tasks, while maintaining sufficient persistence, concentration, or pace to timely and appropriately complete such tasks. . . . The claimant can adapt to

>routine workplace changes and make simple work-related decisions, but cannot endure a fast-paced production rate or strict quota requirements.

(R. 23, 27).

Obviously, with a simple *routine* job, plaintiff would not have to process *novel* information. And, just as obviously, without a production quota, he wouldn't have to maintain any more than a reasonable persistence or pace, as Dr. Green found. And, the ALJ found the plaintiff was able adequately to maintain persistence and pace to work part-time in a much more demanding type of job – computer programming – than the RFC. (R. 23). *See Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)(plaintiff's work history supported finding that he could perform low production work despite moderate restriction in concentration, persistence and pace). The accommodations the ALJ made, then, are – again – *obviously* tied to Dr. Green's findings. *See Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019)(". . . an ALJ may reasonably rely upon the opinion of a medical expert who translates these findings into an RFC determination. "); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019)("The ALJ tied the RFC to the evidence in the record—[s]he tailored [plaintiff's] workplace setting to accommodate for [plaintiff's] anxiety, depression, . . . issues . . . ."). One doesn't even need a "logical bridge" to figure this out, but the ALJ provided one anyway. [Dkt. #16, at 2].

The plaintiff, however, insists on more and includes a bit of the "concentration, persistence, pace" argument that is now almost ubiquitous in Social Security disability cases. The plaintiff complains that the ALJ's finding that plaintiff "cannot endure a fast-paced production rate or strict quota requirements" did not accommodate a moderate limitation in concentration, persistence, and pace. The guidance on review of these "CPP" cases is somewhat nebulous, especially when combined with the "logical bridge" standard, and that makes them fertile ground for complaints in Social Security disability cases. On the one hand, the Seventh

11

Circuit has said that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019). *See also O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016).

But, in other cases, the court has found that a plaintiff with a moderate restriction on concentration, persistence, and pace can perform simple, repetitive work. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (claimant with deficiencies in concentration, persistence, or pace can perform semiskilled work); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (claimant with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work"). And, more specifically, the court has found it acceptable for an ALJ to translate a moderate restriction into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor. *See, e.g., Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018). And, as already discussed, that's what the ALJ did here.

Again, one reader will see a "bridge" where another sees whitewater rapids. In my view of the record, there is not much of a step from the evidence to the ALJ's RFC and, in turn, the job possibilities the vocational expert testified would accommodate plaintiff's limitations. Plaintiff has difficulty processing novel information, limited ability to carry out tasks with reasonable persistence and pace, and limited ability to appropriately tolerate stress. But, at the same time, the plaintiff can sustain concentration and process information sufficiently to computer program, part-time. Dishwashing and cleaning obviously do not involve processing novel information or maintaining the persistence, and focus and concentration needed for part-time computer programing. While the plaintiff wants more of an explanation, more of a "bridge," it is unclear

exactly what would suffice. This is a case where it would have behooved plaintiff to develop his CPP argument beyond simply throwing a dart at the ALJ's decision. *See Jozefyk*, 923 F.3d at 498 (plaintiff offered no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand); *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019)(plaintiff failed to show that his moderate limitations in concentration, persistence, and pace prevented him from completing "simple, routine and repetitive tasks"). As it is, the path of the ALJ's reasoning seems sufficiently clear.

Plaintiff also argues that the ALJ failed to accept the findings of a reviewing psychologist that plaintiff could only perform one to two step tasks and had a moderate limitation in concentration. (R. 131). But this assessment has nothing to do with this case. It was nothing more than the product of the overburdened system and the jumble that these oversized records generally are. In concluding that the "claimant" was limited to one- or two-step tasks, the reviewer explained that "she" [sic] had an 8th grade education, and lived with her husband [sic] and one of four children. (R. 131). The psychological consultative examination referred to was done on January 27, 2018 (R. 131), and was of a woman, not a man. Plaintiff is a male and his examination was on September 12, 2017. (R. 129). The assessment was obviously not about the plaintiff, who is male, has no children, and lives with his girlfriend and parents. (R. 52). The fact that plaintiff focuses on a piece of evidence that so obviously has nothing to do with this case must have been a result of a mistake by counsel in the review of the record. But mistakes are common; they are inherent in the human condition. *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992); *LM Ins. Co. v. ACEO, Inc.*, 2010 WL 1655206, *1 (N.D.Ill. 2010).

In any event, the ALJ rejected the reviewer's opinion because more evidence had come in that they had not seen. (R. 28). An ALJ need not include limitations in the RFC finding unless

13

he or she finds them supported by the record. *See Jozefyk,* 923 F.3d at 97-98; *Burmester,* 920 F.3d at 511; *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015). Even so, the ALJ actually did include a moderate limitation in concentration, persistence, and pace in the findings (R. 23), and made it part of the RFC as explained above. Plaintiff cites no evidence that those deficits prevent him from performing simple, routine tasks. *Jozefyk*, 923 F.3d 498 (rejecting similar argument); *Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020)("At any rate, moderate limitations, on their own, do not mean a claimant is disabled."); *Capman v. Colvin*, 617 Fed. Appx. 575, 579 (7th Cir. 2015) ("A moderate limitation is not a complete impairment.").

**2.**

We now turn to the plaintiff's contention that the ALJ failed to properly evaluate his allegations regarding his symptoms and limitations. First, the plaintiff contends the ALJ's evaluation is fatally flawed because the ALJ employed boilerplate language in her finding that plaintiff's symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 28). But, the "phrase 'not entirely credible' is meaningless and unacceptable boilerplate only when the ALJ substitutes it for a proper, full-bodied explanation of why credibility is lacking.*" Hammerslough v. Berryhill*, 758 F. App'x 534, 539 (7th Cir. 2019). "Boilerplate is not fatal so long as the ALJ goes on to provide a suitable rationale" for the conclusions. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Here, although the plaintiff contends the ALJ "failed to specify the reasons she discounted [his] symptoms" (R. 28), the ALJ clearly did that which the plaintiff incorrectly contends she did not. She pointed to the medical evidence, conservative treatment, and activities. The plaintiff's claim is a mischaracterization of the record, made more unacceptable because plaintiff's own brief lists the very reasons the ALJ gave for discounting his allegations. The ALJ's assessment

14

of plaintiff's symptoms is "reasoned and supported" by the record. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Obviously, the ALJ, first and foremost, relied on the clinical notes from plaintiff's counselors and treating psychiatrist, which recounted mostly normal, unremarkable findings. The plaintiff's brief has taken a different approach, But ignoring critical evidence does not make it vanish or reduce its significance. In this case, the discrepancy between plaintiff's allegations and the medical evidence was a valid reason for the ALJ to have found that the plaintiff was exaggerating. *See, e.g., Stewart v. Berryhill*, 731 F. App'x 509, 510 (7th Cir. 2018); *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir.2005). Simply insisting that the plaintiff is disabled is not enough. And "saying so doesn't make it so…." And saying it repeatedly doesn't make it so. *Dennis v. Kellogg Co.*, 697 F.3d 858, 869 (9th Cir. 2012). *Accord Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

The ALJ also properly took note of plaintiff's activities, including part-time work, and noted that the plaintiff testified that he was able to work about 20 hours a week, on Tuesdays, Wednesdays, and Thursdays. (R. 25). Plaintiff calls his part timework a "dogged effort," *cf. Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016)(plaintiff worked despite severe pain treated with strong pain medications, epidural injections, multiple surgeries, and physical therapy), but the record just as easily supports the inference that the situation is the product of a lenient employer and plaintiff's valuable computer skills. *See, e.g., Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). There's no way to tell. In any event, given the limitations the ALJ found plaintiff to be experiencing due to his depression, the ALJ found plaintiff was capable of performing work that was far less demanding in terms of attention, concentration, and skill.

Overall, it is clear from the plaintiff's brief that he is resting his case on his allegations and self-reports, rather than the observations of his mental healthcare providers and the agency's examiners and reviewers. While mental-health assessments must rely in part and are normally based on what the patient says, doctors must assess a patient's complaints through the objective lens of their professional expertise. *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019). Plaintiff might be saying he is exhausted and too tired to work, but his often self-interested conclusions are not conclusive and binding, especially when his doctor and counselors don't agree. In fact, they are saying plaintiff's attention, concentration, thought processes, judgment, and insight are all, in the main, normal. The ALJ's decision is logically drawn from and based on those findings.

Accordingly, plaintiff's contention that the ALJ ignored his "documented" problems with concentration, attention, persistence and pace is incorrect. The documentation is clearly to the contrary. Treating psychologist and psychiatrist observations, in the main, revealed that plaintiff exhibited no problems with memory, concentration, or attention. (R. 461-62, 517 (normal concentration, limited pace), 600, 602-04, 624-25, 635-37, 656-57, 670 -71, 680-81, 696-97, 718-19, 734-35, 746-47 765-66, 779-80, 791-92), Surely, if plaintiff's problems in these areas were as debilitating as he claims, one of his counselors or his psychiatrist would have noticed and recorded them. But they did not. This is one of those areas where silence can be pregnant with meaning. *See Tehan U.S. ex. rel. v. Shott*, 382 U.S. 406 (1966). *See* also cases cited in *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2018 WL 2254790, at *3 (N.D. Ill. 2018).

**3.**

Finally, the plaintiff contends that the ALJ erred in rejecting the opinion from his treating psychiatrist that he was disabled and would miss 7 to 10 days of work every month. As the

16

plaintiff concedes, however, the ALJ clearly – and understandably – rejected Dr. Channon's opinion as unsupported by the medical evidence and his own treatment notes. (R. 28). Thus, the ALJ did exactly what she was supposed to do when rejecting a medical opinion: she provided a sound explanation for doing so. *See Zoch v. Saul*, _F.3d_ (7th Cir. 2020); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020)(medical opinion has to be supported by sound medical evidence and a consistent record); *Urbanek v Saul*, 796 Fed.Appx. 910, 915 (7th Cir. 2019); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 305–06 (7th Cir.2010).

It bears repeating that an ALJ may properly reject a doctor's opinion if it is based on a claimant's subjective complaints to the doctor rather than on the doctor's objective findings. *Zoch*, *supra*; *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005). If the rule were otherwise, an ALJ would, in effect, be compelled to credit an applicant's complaints and a trial would become, in most cases, superfluous – the outcome preordained. In the case of a psychiatrist or psychologist, however, patients' self-reports often form the basis for psychological assessments. *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Still, even in such cases, the doctor can be too uncritical. Thus, in *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)(the court held that the ALJ properly rejected the opinion from a psychologist as it "largely reflected [plaintiff's] subjective reporting.").

That certainly seems to have been the case here. Dr. Channon essentially signed off on the plaintiff's desire to work no more than part time. Anyone reading the notes from plaintiff's counselors and from Dr. Channon – all of which involved session after session of normal findings – would be startled to see Dr. Channon's opinion that plaintiff's was suffering from

17

disabling depression. It is a fantastic leap from the *normal* attention, memory, concentration, and thought process he observed to the finding of disability he suddenly claimed existed. The ALJ properly rejected such an out-of-nowhere assessment. Medical assessments like an opinion by any expert, must be sustained by evidence. Merely saying so does not make it so in medicine anymore than in any other discipline. Perhaps Dr. Channon was, as often occurs with many treating doctors, trying to do a favor for a client. *See Punzio v. Astrue*, 630 F.3d 704, 713 (7th Cir. 2011); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). But it is inescapable that his observations in his sessions with plaintiff provide no "logical bridge" to his opinion that plaintiff cannot do any work. A doctor's opinion is only as good as its basis in treatment records. *See Winsted*, 923 F.3d at 478; *Filus*, 694 F.3d at 868. *Compare Williams v. United States*, 567 U.S. 50 (2012)(an expert's opinion is only as good as the independent evidence establishing its underlying significance). An ALJ can always question a doctor's opinion if it is not supported by the doctor's own notes – *Winsted*, 923 F.3d at 47 – as the ALJ properly did here.

In sum, it is no surprise that an opinion that a doctor renders by "checking boxes rather than explaining how medical evidence support[s] his conclusions" is given little weight – and rightfully so. *See Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020); *Urbanek v. Saul*, 796 F. App'x 910, 915 (7th Cir. 2019)(narrative opinions, as opposed to checklist, made clear the plaintiff could sustain the basic mental demands of simple, unskilled work); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019)(checklist "opinion" less helpful than a narrative explanation).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment [Dkt. #14] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 12/14/20